UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Magistrate No. 11-7160-JCB

UNITED STATES OF AMERICA

v.

HARRY A. STEPHENSON a/k/a
STEVE STEPHENSON

**REPORT AND RECOMMENDATION ON THE GOVERNMENT'S
REQUEST FOR ORDER AUTHORIZING INVOLUNTARY
MEDICATION OF DEFENDANT TO RESTORE COMPETENCY**

July 2, 2013

Boal, M.J.

For the following reasons, the undersigned recommends that the District Court authorize the Bureau of Prisons ("BOP") to medicate involuntarily defendant Harry S. Stephenson ("Stephenson"), in order to restore his competency to stand trial.[1]

I.   FACTUAL AND PROCEDURAL HISTORY

Stephenson is charged in a criminal complaint with using interstate and/or foreign commerce to send threatening communications in violation of 18 U.S.C. § 875(c).  Docket No. 1. Specifically, the government alleges that on October 14, 2011, Stephenson posted a "tweet"[2]

---

[1] The limited available precedent indicates that the question before the Court is one requiring resolution by a United States District Judge.  See United States v. Rivera-Guerrero, 377 F.3d 1064, 1069 (9th Cir. 2004); United States v. Vigeant, 11-MJ-06060, 2012 WL 3064410, * 8 (D. Mass. April 18, 2010).  This Court finds the reasoning contained in those cases to be persuasive and follows that course.

[2] A "tweet" is a text-based electronic message, typically up to 140 characters, posted on Twitter (www.twitter.com), a social networking and micro-blogging website that allows its users to post and receive messages and images.  Stephenson posted the October 14, 2011 tweet on TwitLonger (www.twitlonger.com), a website that allows users to post "tweets" longer than 140 characters on Twitter.

1

whereby he threatened to injure Noreen Gleason, Assistant Special Agent in Charge with the Federal Bureau of Investigation's Boston Office ("ASAC Gleason"). Docket No. 1-1 at ¶¶ 4- 11. The tweet read as follows:

> For Noreen Gleason.
>
> Resistance is Futile: Escape is Futile:
> I'm coming for you. I'm coming for you. I have slew dozens of Satans's minions to come for you, nobody and no thing can stand in the way. Your [sic] my life blood, I'm coming for you, I'm coming for you. As you look around your office, as you look around your home, I'm coming for you, I'm coming for you. You can not run away, you can not run away, I'm coming for you, I'm coming for you. You feel the soft warmth of a breathe on your cheek, you look but you cannot see who it is? He is coming, he is coming….There as the creaking of the doors, the lids, the sounds of night during the day as you turn, you see the night during today, he is coming. He is beyond the veil, he sees you night and day, he is coming for you, he is coming for you. He wears colors of the night, he wears colors of the day. He is coming, and I am coming for you! He is coming as death, I am coming to save….I'm coming for you!

Docket No. 1, Exh. 2.

The government contends that Stephenson's tweet was the culmination of a longstanding pattern of threatening electronic messaging. Specifically, the government contends that, since 2008, Stephenson has sent emails to, and posted electronic messages about, ASAC Gleason and other current and former federal employees. Docket No. 1-1 ¶ 5. In the weeks preceding his October 14, 2011 tweet, Stephenson took and posted pictures of ASAC Gleason, posted a tweet describing how to construct dangerous weapons, and posted a tweet stating "Only reward is for Noreen's head." Id. at ¶¶ 6-11.

After his arrest, Stephenson consented to voluntary detention without prejudice. See Docket No. 8. On November 18, 2011, counsel for Stephenson filed an assented-to motion under 18 U.S.C. §§ 4241(b), 4247(b) for a psychiatric examination of Stephenson to determine his competency to stand trial, Docket No. 9, which the Court granted on

November 21, 2011.  Docket No. 10.  Stephenson was examined by Shawn E. Channell, Ph.D., ABPP ("Dr. Channell").  After the examination, Dr. Channell issued a Forensic Mental Health Evaluation in which he concluded that Stephenson was mentally incompetent to stand trial and recommended that he be committed for further treatment and evaluation pursuant to 18 U.S.C. § 4241(d).

Counsel for both parties submitted status reports in which they indicated their agreement with Dr. Channell's conclusions regarding Stephenson's competency.  See Docket Nos. 17-18.  In particular, defense counsel did not contest the findings in the report.  Based on the Court's own review of the report, and without any objections, the Court found that Stephenson was "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he [was] unable to understand the nature and consequences of the proceedings against him or assist properly in his defense."  Docket No. 22 at 1.  The Court committed Stephenson to the custody of the Attorney General for further medical treatment and evaluation pursuant to Section 4241(d).  Id.

Stephenson was evaluated at FMC Devens ("Devens") from October 25, 2012 to February 5, 2013 by Dr. Channell and Staff Psychiatrist Vikram Kambampati, M.D. ("Dr. Kambampati").  Drs. Channell and Kambampati submitted a Forensic Report dated February 7, 2013 to the Court under seal.  Docket No. 34.  The Forensic Report indicates that Stephenson has a history of mental health issues dating back at least to 2005.  FR[3] at 5-9.[4]

---

[3] "FR __" refers to the February 7, 2013 Forensic Report.  Docket No. 34.

[4] Although the Court does not recount herein Stephenson's mental health history as reported by the BOP, it notes that from at least 2005 to present, medical providers have observed that Stephenson harbors "fairly elaborate delusional ideas" and beliefs that people are following him, talking about him, "spying" on him, and "out to get him."  FR at 5-7.  In 2007, Stephenson was twice treated for depression and suicidal ideations.  Id. at 6-8.  He also has discussed his intermittent ability to engage in "remote viewing" whereby he is able to "predict stuff" that

The Forensic Report further details the findings of Stephenson's evaluation. The findings indicate that Stephenson harbors delusional beliefs that impact his rational understanding of the instant suit, his appreciation of his mental illness, and his willingness to participate in treatment. For example, in an interview with Dr. Kambampati on November 5, 2012, Stephenson referenced the "M.J. Boal" notation on his court order but appeared to have no recognition that the notation referred to Magistrate Judge Jennifer C. Boal. Id. at 10. Instead, he stated that "M.J. Boal" was a construction worker who had been following him across the country. Id. He further stated that "Boal" had also worked as a nurse at Devens during his prior evaluation, but now worked at the U.S. Attorney's Office in Boston. Id.

Stephenson was interviewed again on November 14, 2012. Id. When the issue of competence to stand trial was discussed, Stephenson became agitated. Id. He stated that he did not believe in the legitimacy of the court in this case and refused to accept the possibility of taking medication. Id. at 11. He then terminated the interview. Id.

Stephenson was seen again on November 30, 2012, at which point he was informed about an upcoming administrative hearing to determine the propriety of involuntary medication. Id. Stephenson again refused to take medication and denied having a mental illness. Id.

On December 6, 2012, the BOP held an administrative due process hearing to determine whether Stephenson was dangerous or gravely disabled due to his mental illness, in accordance with Washington v. Harper, 494 U.S. 210 (1990).[5] At the hearing, Dr. Kambampati explained

---

would later come true. Id. at 8-9. He described one such prediction of a massive meteor named "Gamesweeper" that looks "sort of like a vacuum cleaner" and is "out around Saturn and heading towards us." Id.

[5] In Harper, the Supreme Court discussed the forcible administration of medication for purposes "related to the individual's dangerousness, or purposes "related to the individual's own interests where refusal to take drugs puts his health gravely at risk." Harper, 494 U.S. at 225-6. Pursuant to Sell v. United States, 539 U.S. 166, 180–81 (2007), before ordering forcible

that Stephenson suffered from chronic schizophrenia, including persecutory delusions and an impaired thought process. Id.  He nevertheless opined that Stephenson did not qualify for involuntary medication under the Harper standard. Id.  Based on this testimony, Dr. James Kennedy, Chief Psychiatrist at Devens and hearing officer for the proceeding, concluded that Stephenson was not a candidate for involuntary medication on grounds of dangerousness or grave disability. Id.

Stephenson also participated in a Competency Restoration Group ("CRG") from October 31, 2012 through December 28, 2012. Id.  The CRG is designed to educate participants on legal proceedings, decision making, and how to work with one's attorney. Id.  Stephenson was attentive during CRG sessions but required prompting to participate. Id.  In addition, when he did participate, Stephenson discussed information about his case or expressed delusional beliefs instead of providing input to the group discussion. Id. at 11-12.

Stephenson was administered portions of the Evaluation of Competency to Stand Trial Revised ("ECST-R"), a "semi-structured interview designed to assess understanding of courtroom proceedings, ability to make decisions which are not grossly impaired by mental illness, and the ability to establish and maintain a working relationship with an attorney." Id. at 14.  The ECST-R revealed that, although Stephenson has a generally strong factual understanding of his case and the legal process, his delusional beliefs hinder his rational understanding of the case, his ability to make decisions, and his ability to work with his attorney. Id. at 14-15.

Drs. Channell and Kambampati diagnosed Stephenson with schizophrenia (paranoid type), alcohol dependence (in full sustained remission), type II diabetes, and unspecified back

---

medication to render an individual competent to stand trial, courts should consider whether such medication is warranted for a different purpose.

pain. Id. at 13.  Nevertheless, they concluded that there is a "substantial probability" that Stephenson's competency could be restored with psychotropic medication.  Id. at 15.  Specifically, they recommended a four-month treatment period consisting of Abilify, Geodon, Risperdal, and Haldol.  Id. at 23.  Because Stephenson denies having a mental illness and refuses to accept medication, the BOP recommended that the Court order an additional period of hospitalization and treatment.  Id. at 25.

The Court conducted a hearing on involuntary medication on May 23, 2013 ("Sell hearing").  Docket No. 46.  At the hearing, the government called Dr. Channell as a witness and introduced the Forensic Report into evidence.  See Docket No. 47.  Dr. Channell affirmed the findings in the Forensic Report and explained that there had been no developments since its filing that would alter his conclusions on the proposed course of treatment.  Counsel for Stephenson cross-examined Dr. Channell and introduced into evidence several studies on which he relied.  See id.

II. ANALYSIS

The parties dispute the propriety of involuntary treatment.  The government argues that a period of involuntary medical treatment could restore Stephenson's competency and prove beneficial to his medical condition.  Stephenson argues that the government cannot satisfy its burden to identify a proper basis for involuntary treatment and to show that such treatment could actually restore Stephenson's competency.

A. Legal Framework

Upon a court's finding that a defendant is mentally incompetent to stand trial, he shall be committed to the custody of the Attorney General for hospitalization and to determine whether there is a "substantial probability that in the foreseeable future he will attain the capacity to

6

permit the proceedings to go forward." 18 U.S.C. § 4241(d)(1). Generally, the period of commitment should not exceed four months. Id. A court may, however, extend the commitment term for an additional "reasonable period of time" if it finds that there is a "substantial probability" that within such time the defendant's condition will improve to permit the proceedings to go forward. 18 U.S.C. § 4241(d)(2).

The government may obtain a court order to medicate a defendant forcibly in order to restore his competency to stand trial in the rare case[6] where it can show: (1) important governmental interests are at stake; (2) involuntary medication will significantly further the governmental interests; (3) involuntary medication is necessary to further those interests; and (4) the administration of drugs is medically appropriate. See Sell, 539 U.S. at 180–81 (2007).[7] At the Sell hearing, the government agreed that it bears the burden of proof by clear and convincing evidence. See also United States v. Vigeant, 2012 WL 3064410, at * 3 (collecting cases).[8]

B.   Sell Analysis

1.   *Important Governmental Interests*

The parties dispute the importance of the governmental interests in this case. The government's interest in bringing to trial an individual accused of a serious crime is important.

---

[6] Such orders should be rare given that individuals "have a significant constitutionally protected liberty interest in avoiding the unwanted administration of antipsychotic drugs." Sell, 539 U.S. at 178.

[7] The Supreme Court has emphasized that, before conducting the Sell analysis, courts should consider whether forced medication is warranted for a different purpose. See United States v. Burhoe, 692 F.Supp.2d 137, 142 (quoting Sell, 539 U.S. at 180–81). At the Sell hearing, the government presented evidence that Stephenson is not a danger to himself or others and that his health would not be put gravely at risk if he continued to refuse medication. FR at 16. Accordingly, the Court finds that Stephenson does not meet the criteria for involuntary medication under Harper and proceeds with the Sell analysis.

[8] The First Circuit has not addressed the government's burden of proof in this context.

Sell, 539 U.S. at 180.  Courts must, however, "consider the facts of the individual case in evaluating the Government's interest in prosecution."  Id.  In gauging the seriousness of a crime, courts consider the length of potential incarceration associated with the charged offense.  Compare United States v. White, 620 F.3d 401, 410-11 (4th Cir. 2010)(maximum statutory penalty as basis for determining seriousness) with United States v. Hernandez-Vasquez, 513 F.3d 908, 918-19 (9th Cir. 2007) (likely advisory sentencing guidelines range is appropriate starting point for analysis of crime's seriousness).

In addition, the nature of the crime itself and the defendant's history of similar conduct may bear on the seriousness of a charged offense.  See, e.g., United States v. Green, 532 F.3d 538, 550 (6th Cir. 2008) (nature of crime may inform determination regarding its seriousness); United States v. Johnson, CR 06-1037, 2007 WL 1455756, at *4 (N.D. Iowa May 17, 2007) (considering, among other things, defendant's history of similar conduct).  Courts have also considered the potential that the defendant could commit similar crimes in the future and the government's interest in protecting the public from his future crimes.  See, e.g., United States v. Nicklas, 623 F.3d 1175, 1179-81 (8th Cir. 2010).

Here, the criminal complaint charges Stephenson with sending threatening communications to ASAC Gleason.  Docket No. 1; Docket No. 1-1 at ¶¶ 5-11.  The offense carries a statutory maximum punishment of five years in prison.  See 18 U.S.C. § 875(c).  The government represented that the advisory sentencing guideline range would be 41-51 months after enhancements.  The record also indicates that Stephenson has a history of posting threatening messages and sending harassing emails, and did so even after an interview with the United States Marshal Service.  See Docket No. 1-1 at ¶ 5 n. 1.

As to the nature of the charged offense, courts have found charges brought under 18 U.S.C. § 875(c) and similar statutes constitute "serious crimes."  See e.g., United States v. Nicklas, 2009 WL 3872140, at *5 (W.D.Ark. Nov. 18, 2009) (sending threatening communication in interstate commerce "is certainly a serious offense"), aff'd, 623 F.3d 1175 (8th Cir. 2010); see also United States v. Horton, 5:11CR393, 2013 WL 1728895, at *6 (N.D. Ohio Apr. 22, 2013) (finding important governmental interest in bringing to trial a defendant charged with one count of mailing a threatening communication under 18 U.S.C. § 876(c)).  At least one court has found that the charged offense is a crime of violence.  See U.S. v. Choundry, No. 13-cr-0150, 2013 WL 1785392, * 3 (E.D.N.Y. Apr. 26, 2013).

For all of these reasons, the government has demonstrated by clear and convincing evidence an important interest in restoring Stephenson's competency.

However, special circumstances may exist that lessen the importance of the government's interest in prosecution.  Sell, 539 U.S. at 180.  Circumstances that may diminish the government's interest include the likelihood that the individual could be found not guilty by reason of insanity, the possibility of civil commitment if the individual is not restored to competency, and the length of time an individual has already spent in pretrial confinement for which he might receive credit toward any sentence ultimately ordered.  See Green, 532 F.3d at 551 (citing Sell, 539 U.S. at 180).

At the Sell hearing, counsel for Stephenson encouraged the Court to consider such special circumstances.  However, he represented that it was too early to determine whether Stephenson will raise an insanity defense at any potential trial.  Dr. Channell also testified that Stephenson has not been evaluated to determine whether he meets the standard for civil commitment under Section 4246.  Accordingly, there is no evidence at this time to indicate that Stephenson would

likely be found not guilty by reason of insanity or that he would qualify for civil commitment under 18 U.S.C. § 4246.  See United States v. Gomes, 387 F.3d 157, 161 (2d Cir. 2004).

While Stephenson has been incarcerated for a good deal of time, in light of the available precedent, this Court finds that his pretrial custody is not so lengthy as to undermine the government's interest.  He has already been confined for approximately 20 months and, if the Court ordered a period of forced medication, his pre-competency detention would extend at least for an additional 4 months.  If restored to competency, Stephenson would then face further detention through the conclusion of his trial.  If convicted, however, Stephenson may still serve time under the guideline range presented by the government.  Courts have found no special circumstances where, in light of the applicable guideline ranges, defendants have faced similar or longer periods of pretrial custody.  See Horton, 2013 WL 1728895 at *8 (no special circumstances for defendant with advisory guideline sentencing range of 10-16 months who, at time of order, had already been detained for 19 months); see also Nicklas, 623 F.3d at 1179 (no special circumstances for defendant who, at time of order, had been detained for less than half the time for which he could have been sentenced).

Accordingly, the Court finds that, after considering a number of special circumstances, none are sufficient to undermine the important governmental interest in prosecuting Stephenson.

### 2. *Involuntary Medication Will Significantly Further The Governmental Interests*

Involuntary medication significantly furthers the government's interest if: (1) the administration of drugs is "substantially likely to render the defendant competent to stand trial" and (2) the drugs are "substantially unlikely to have side effects that would interfere significantly with the defendant's ability to assist counsel in conducting a trial defense ...."  Sell, 539 U.S. at 181.

A key element of proof in cases involving involuntary medication is creditable expert testimony. See United States v. Decoteau, No. 08-cr-736-ENV, 2012 WL 5481962, at *4 (E.D.N.Y. Nov. 1, 2012) (citing Gomes, 387 F.3d. at 161).  The Court heard the testimony of Dr. Channell from the BOP.[9]  Dr. Channell's testimony was forthright and candid.  He evidenced appropriate concern for Stephenson's medical and physical well-being.  He based his testimony appropriately on both an initial psychiatric evaluation and a Section 4241(d) evaluation.  His findings and conclusions also draw on his experience evaluating patients with conditions similar to Stephenson's and rely heavily on Dr. Kambampati's in-person interviews with Stephenson.  Thus, the Court credits Dr. Channell's testimony on the proposed course of involuntary medication.

Dr. Channell diagnosed Stephenson with schizophrenia, paranoid type. FR at 13.  The defendant does not dispute the diagnosis.  In finding a "substantial probability" that Stephenson would be restored to competency through the proposed course of treatment, Dr. Channell relies on several studies indicating that similar courses of treatment have resulted in favorable competency restoration rates.  FR at 16-17.  At the Sell hearing, Stephenson's counsel cross-examined Dr. Channell on the methodologies underlying the cited studies and their applicability to Stephenson's current situation.  Dr. Channell acknowledged that the cited studies do not precisely mirror Stephenson's particular situation.  He further admitted that he could not guarantee that the proposed treatment would eliminate Stephenson's delusions, let alone any specific delusion.  Dr. Channell nevertheless stood by his conclusion that Stephenson's chances of regaining competency would be similar to that demonstrated in the cited studies.  In addition,

---

[9] Defense counsel presented no challenge to Dr. Channell's qualifications.

he explained that the recommended medications likely would lessen the frequency of Stephenson's delusions and render them less disruptive to his rational thinking.

After due consideration of the record, the Court finds that the government has met its burden of proof in demonstrating that the proposed treatment is substantially likely to render Stephenson competent to stand trial. The Court credits Dr. Channell's testimony, which is based, inter alia, on studies indicating a success rate of 75% or greater.[10] See Gomes, 387 F.3d at 161-62 (citing cases recognizing that a seventy percent chance that the defendant would be restored to competency meets the substantially likelihood standard).

As to the potential side effects of the proposed treatment, Dr. Channell testified about potential cognitive and non-cognitive side effects and proposes to mitigate the risk of such effects through medical oversight, dosage control, and supplemental medication. See also FR at 19-25. Counsel for Stephenson does not dispute BOP's ability to monitor and mitigate any potential side effects. Thus, the Court finds that the government has met its burden of proof to show that the proposed treatment is substantially unlikely to have side effects that would interfere significantly with Stephenson's ability to assist his counsel.

---

[10] The Forensic Report cites a study by Dr. Bryon Herbel and Dr. Hans Stelmach to illustrate the potential restoration rates for defendants with psychotic disorders similar to schizophrenia. Bryon L. Herbel & Hans Stelmach, *Involuntary Medication Treatment for Competency Restoration of 22 Defendants with Delusional* Disorder, 35 J. AM. ACAD. PSYCHIATRY & L. 47 (2007). Courts, however, have expressed reservation about aspects of the study's methodology. See United States v. Moruzin, 583 F. Supp. 2d 535, 548 n.15 (D.N.J. 2008); see also United States v. Ruiz-Gaxiola, 623 F.3d 684, 697-701 (2010). Here, although the Forensic Report mentions the study, it does not rely entirely on it or otherwise suggest that Stephenson's chances of regaining competency would be similar to that experienced by that study's participants. See FR at 17. Instead, the Forensic Report relies on other studies to reach its conclusions.

3.      *Involuntary Medication is Necessary*

The third <u>Sell</u> factor requires courts to "find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results." <u>Sell</u>, 539 U.S. at 181.  Here, the BOP acknowledges recent evidence suggesting that cognitive behavior therapy may be a valuable treatment intervention alongside recommended antipsychotic medication.  <u>See</u> FR at 22. However, the BOP explains, "there is no convincing evidence that Schizophrenia…responds well or better to treatment with psychotherapy alone compared to the response to treatment with antipsychotic medication." <u>Id.</u>  The government further notes Stephenson's resistance to treatment recommendations. <u>Id.</u>  Indeed, the record indicates that Stephenson has refused medication on several occasions. <u>Id.</u> at 10-11.

Accordingly, the Court finds that the government has demonstrated by clear and convincing evidence that the proposed course of treatment is necessary to further its interest in restoring Stephenson's competency.

4.      *The Administration of Antipsychotic Medication is Medically Appropriate*

The proposed treatment must be "<u>medically</u> <u>appropriate</u>, i.e., in the patient's best medical interest in light of his medical condition." <u>Sell</u>, 539 U.S. at 181 (emphasis in original). The Forensic Report notes that antipsychotic medication is demonstrably effective in treating schizophrenia and is considered an "essential element of treatment." FR at 22-23.  At the <u>Sell</u> hearing, Stephenson's counsel suggested that a regimen of Haldol would be preferable to Abilify.  Counsel, however, did not provide any support for his position or otherwise dispute the government's general assertion regarding the medical propriety of antipsychotic medication.

Accordingly, the Court finds that the government has demonstrated by clear and convincing evidence that the proposed course of treatment is medically appropriate in light of Stephenson's medical condition.

III. CONCLUSION

For the foregoing reasons, I recommend that the government's request for an order authorizing forcible medication of Stephenson be granted as described in the Forensic Report. Specifically, I recommend that the Court order a four-month period of commitment pursuant to 18 U.S.C. § 4241(d) for the purposes of attempting to restore Stephenson to competency with a further report to the Court no later than at the end of the four-month period.

IV. REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital,199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

                    /s/ Jennifer C. Boal
                    JENNIFER C. BOAL
                    United States Magistrate Judge